ORDER

SHEDD, District Judge.
This action, as well as several others, arises out of certain employment decisions made by defendant after she was elected to the position of State Superintendent of Education for South Carolina. Plaintiff, a former employee of the South Carolina Department of Education, contends that defendant unlawfully constructively discharged him in violation of the First Amendment to the United *720 States Constitution. Plaintiff alleges a federal cause of action under 42 U.S.C. § 1983, and state law causes of action for outrage and civil conspiracy. This matter is now before the Court for review of the Report and Recommendation (“the Report”), entered by United States Magistrate Judge Joseph R. McCrorey,[1] in which Magistrate Judge McCrorey recommends that the Court grant defendant’s motion for summary judgment as to all of plaintiffs claims. Plaintiff has filed Objections to the Report. After carefully reviewing the record in light of the controlling legal principles, the Court concludes the motion for summary judgment should be granted.
/. STANDARD OF REVIEW
The Report and plaintiffs Objections thereto relate to a dispositive matter. Therefore, the Court is guided by the standard set forth in 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, and the ease law interpreting those authorities. As to those portions of the Report to which plaintiff has filed specific; written Objections, the Court is required to make a de novo determination either upon the record, or after receiving additional evidence. 28 U.S.C. § 636(b)(1)(B); Fed. R.Civ.P. 72(b).[2] However, the Court is not required to review, under a de novo or any other standard, those portions of the Report to which plaintiff has not properly objected. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985). Instead, as to those portions of the Report, the Court need only satisfy itself that there is no clear error on the face of the record. Fed.R.Civ.P. 72(b) Notes of Advisory Committee on Rules. While the level of scrutiny entailed by the Court’s review of the Report is thus dependent upon whether or not plaintiff filed objections to a particular portion of the Report, in either event the Court may, after review, accept, reject, or modify any portion of the Report, and the Court may also receive further evidence or recommit the matter to the magistrate judge with instructions. Wallace v. Housing Auth. of Columbia, 791 F.Supp. 137, 138 (D.S.C.1992).

II. BACKGROUND

Plaintiff, a member of the Democratic party and a former Democratic state legislator, began working for the South Carolina Department of Education in 1970. In 1979, then State Superintendent Dr. Charlie Williams, a Democrat, appointed plaintiff to fill the newly created position of Legal Assistant to the Superintendent and Legislative Liaison (“Legal Assistant”). As Legal Assistant, plaintiff reported directly to Dr. Williams. The majority of plaintiffs job duties involved working with the South Carolina General Assembly. Plaintiff testified in his deposition that he served as Dr. Williams’ “voice in the legislature.”
Defendant, a Republican, defeated Dr. Williams in the 1990 general election for State Superintendent. Upon assuming office in January 1991, defendant informed plaintiff that he would no longer represent the State Superintendent in the General Assembly. Further, defendant changed plaintiffs job title and job description; however, she did not change his salary. Plaintiff retired from the Department of Education on June 30, 1991.
In this action, plaintiff claims that defendant constructively discharged him because she deprived him of his legislative liaison duties and did not give him any meaningful duties to replace them. Plaintiff contends that defendant did this because of his political affiliation with, and support of, Dr. Williams and the Democratic party.[3] Plain *721 tiff has sued defendant in her individual and official capacity. For the purposes of the motion only, defendant (at page 4, footnote 2, of her memorandum in support of the motion) assumes as true plaintiffs allegation that she constructively discharged him because of his political affiliation.
In the Report, the magistrate judge recommends that the Court grant defendant’s motion for summary judgment in its entirety. Underlying this general recommendation, the magistrate judge utilized the following analy-ses and made the following specific conclusions, all of which are detailed more fully in the Report. First, the magistrate judge concluded that the official capacity claim against defendant is barred under Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and is also defective because plaintiff has requested relief only as to defendant in her individual capacity.[4]
Second, the magistrate judge analyzed plaintiffs First Amendment claim under Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), in which the Supreme Court held that the First Amendment prohibits a government official from discharging a public employee for the sole reason that the employee did not support the political party in power, unless the official can show that party affiliation is an appropriate requirement for the position involved. The magistrate judge found that the decision whether political affiliation is an appropriate requirement for a position is a matter of law for the Court and, thereafter, determined as a matter of law that the position of Legal Assistant is one for which political affiliation is an appropriate requirement. In making this determination, the magistrate judge found that it is immaterial whether defendant actually removed plaintiff from the position of Legal Assistant for supporting Dr. Williams as opposed to doing so because plaintiff is a Democrat. The magistrate judge further concluded that because defendant had the right to transfer plaintiff for political reasons, it is immaterial under Elrod and Branti that defendant did not discharge him directly but, instead (as alleged), constructively discharged him.
Third, .the magistrate judge concluded that, as an alternative basis, defendant is entitled to qualified immunity because it was not clearly established in 1991 that transferring plaintiff from the position of Legal Assistant for political reasons violated plaintiffs constitutional rights. Finally, the magistrate judge concluded that plaintiffs state law tort claims must fail because defendant’s actions were constitutionally permissible.
In a twenty-two page memorandum, plaintiff makes five specific Objections to the Report. Defendant has filed a brief response to plaintiffs Objections stating that because plaintiff has merely restated his summary judgment arguments as his Objections, she stands on her memoranda in support of the motion. Although not in the exact order presented, the Court will address each Objection below.

III. PLAINTIFF’S OBJECTIONS

A. Objection No. 2: The Report Erred In Analyzing Plaintiff’s Alternative First Amendment Claim That He Was Constructively Discharged Because He Openly Supported Charlie Williams In The Election Of 1990.

The starting point for the Court in resolving the issues presented is plaintiffs Objection that the magistrate judge erred by failing to analyze his “alternative” First Amendment claim that he was constructively discharged for openly supporting Dr. Williams in the 1990 general election since the resolution of this Objection controls the course of proceedings as to the other Objections. As noted, the magistrate judge analyzed plaintiffs first amendment claim under Elrod and *722 Branti and concluded that the position of Legal Assistant is one for which political affiliation is a proper requirement. Having reached this conclusion, the magistrate judge determined that plaintiffs “alternative” first amendment claim was precluded based on the analysis set forth in Stott v. Martin, 783 F.Supp. 970 (E.D.N.C.1992) (“Stott II”), in which the district court held:
[I]f “plaintiffs position is indeed one for which political affiliation would have been a legitimate requirement,” his dismissal does not violate the First Amendment even if he actually “was fired for his political activity, not for affiliation.” Therefore, that the motive behind the discharge was retaliation for the employee’s support of certain candidates, rather than an innocent desire to achieve loyal implementation of a new administration’s programs and policies, is immaterial. Hence, even if [defendants] purposefully set out to punish Democrats who supported [the newly elected official’s] adversary, so long as those who they discharged held positions for which political affiliation is an appropriate requirement, they could be lawfully fired notwithstanding the First Amendment.
783 F.Supp. at 993 (citations omitted).
While not conceding the correctness of the magistrate judge’s Elrod-Branti determination, plaintiff argues that even assuming that this determination is correct, he is nevertheless entitled to proceed on his “alternative” first amendment claim. Plaintiff contends that the magistrate judge erroneously relied upon Stott II in light of the decision in Jones v. Dodson, 727 F.2d 1329 (4th Cir.1984), which he argues requires the Court, irrespective of Elrod and Branti, to apply the first amendment analysis established in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); and Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In Pickering and Con-nick, the Supreme Court held that a public employee may not be discharged for the expression of ideas on a “matter of legitimate public concern,” Pickering, 391 U.S. at 571, 88 S.Ct. at 1736; unless the public employer’s “interest in the effective and efficient fulfillment of its responsibilities to the public” outweighs the employee’s interest in free expression of the ideas. Connick, 461 U.S. at 150, 103 S.Ct. at 1692. Plaintiff points out that the court in Stott II did not cite Jones in its analysis of this issue but, instead, relied in large part upon the opinion of the First Circuit in Rodriguez Rodriguez v. Munoz Munoz, 808 F.2d 138 (1st Cir.1986).[5]
After carefully reviewing and applying Jones, the Court concludes that it does not alter the magistrate judge’s recommendation. Jones requires the Court to apply the Pickering-Connick test in cases where there is evidence in the record from which the trier of fact could reasonably find that the plaintiff was discharged not solely for reasons of political affiliation but, instead, for political speech, either alone or in addition to political affiliation. Jones, 727 F.2d at 1334-40.[6] Stated differently, if there is sufficient evidence in the record to support the plaintiffs claim that he was discharged for protected speech in addition to his political affiliation, then only the Pickering-Connick test applies, and the Elrod-Branti test is not applicable. Conversely, if there is no evidence from which the trier of fact could reasonably conclude that the discharge was for any reason other than political affiliation, then the Court should apply only the Elrod-Branti test.[7]
*723 Defendant’s motion for summary judgment is directed at plaintiffs ease in its entirety. Therefore, in response to the motion, it is incumbent upon plaintiff to produce sufficient evidence to withstand the motion in all respects. It is not the Court’s duty to search the record to ascertain whether it is bereft of a genuine issue of material fact. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir.1989). Under Jones, in order for plaintiff to fall under the Pickering-Connick analysis and avoid application of ,the Elrod-Branti test, he is required at this stage of the proceedings to come forward with sufficient evidence in the record from which a trier of fact could reasonably conclude that he was discharged for engaging in protected speech—that is, expressing his support for Dr. Williams, who was defendant’s election opponent.
Plaintiff has failed to meet his burden. Plaintiff has pointed to no evidence in his Objections memorandum which tends to establish that he was constructively discharged because of his alleged political speech. While plaintiff did cite a portion of his deposition testimony for this proposition (presumably) at page 2 of his memorandum in opposition to the motion for summary judgment, the Court has reviewed the cited testimony and concludes that it fails to meet plaintiffs burden as a matter of law.[8] Plaintiffs deposition testimony is not sufficient evidence to establish that plaintiff actually engaged in protected speech. Moreover, even assuming that this testimony is sufficient to establish that plaintiff engaged in protected speech, there is no showing that defendant was aware of the speech or that she considered it in making the decision to transfer plaintiff. For this reason, the Court will overrule this Objection.[9] ■
B. Objection No. 1: The Report Erred In Failing To Accord Absolute Deference To Plaintiff’s Status As A Classified State Employee In Deciding Whether Partg Affiliation Was An Appropriate Requirement For The Effective Performance Of The Plaintiff’s Position.
In concluding that the position of Legal Assistant was one for which political affiliation was an appropriate requirement, the magistrate judge properly utilized the- two-step inquiry set forth in Stott v. Haworth, *724 916 F.2d 134 (4th Cir.1990) (“Stott I”) and applied on remand in Stott II. Plaintiff did not object to the utilization of this test. Instead, plaintiffs main objection to this conclusion is that the magistrate judge erred by not according “absolute deference” to his status as a classified state employee. While acknowledging at page three of his Objections memorandum that whether a position is one for which party affiliation is an appropriate requirement is a question of federal law, plaintiff nonetheless argues that “[w]hen the public office is a creature of state law, that law defines the nature of a position and whether or not partisan activities contribute to effective performance.”[10] Although plaintiff cites several decisions which purportedly support his contention, the Court cannot agree with his interpretation of the law.
Potentially the most persuasive case cited by plaintiff is Nunnery v. Barber, 503 F.2d 1349 (4th Cir.1974), cert. denied, 420 U.S. 1005, 95 S.Ct. 1448, 43 L.Ed.2d 763 (1975), in which the court determined that a patronage discharge case presents an issue which should be resolved by the legislature and that the judiciary should overturn the legislature’s decision only if it is arbitrary or irrational. 503 F.2d at 1356-57. However, the Fourth Circuit has recognized that Elrod “unquestionably overruled” Nunnery. See Ramey v. Harber, 589 F.2d 753, 758 (4th Cir.1978), cert. denied, 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979). More importantly, the Fourth Circuit has recently rejected the proposition that the state’s classification of a position is entitled to “absolute deference.”[11] For example, in Stott I, the Fourth Circuit held that employees who are exempt from the state classification system are presumptively subject to discharge for patronage reasons. 916 F.2d at 142. The court continued that “[wjhile deference must be given to the decision to so designate ... positions as exempt, ... that decision is not unreviewable. The matter is a question of law to be ultimately decided by the courts.” Id. at 142-43; see also Akers v. Caperton, 998 F.2d 220, 225 n. 7 (4th Cir.1993) (same). In light of these authorities, the Court will overrule this objection.[12]
C. Objection No. 5: Plaintiff Was Not A Policymaker By Virtue Of Both His Position Description And Status As An Attorney.
Plaintiff also objects to the magistrate judge’s conclusion concerning the political nature of the position of Legal Assistant, arguing that he was not a “policymaker” by virtue of his position description and his status as an attorney. The Court has reviewed the Report and finds that the magistrate judge did not, as plaintiff suggests, label plaintiff as a “policymaker.”[13] Indeed, the *725 magistrate judge began his analysis of this claim by stating:'
In Branti, the Supreme Court stated that “the ultimate inquiry is not whether the label ‘policymaker’ or ‘confidential’ fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.”
Report, p. 8 (quoting Branti, 445 U.S. at 518, 100 S.Ct. at 1294-95). Moreover, after applying the Stott I analysis, the magistrate judge concluded that the position of Legal Assistant “is one which requires the ‘political sympathy and loyal cooperation’ of the office holder to the policies of the.Superintendent,” and “ ‘offers considerable opportunity to effectuate or to hinder the implementation of [the Superintendent’s] programs and policies.’ ” Report, at 13-14 (citations omitted). Therefore, the Court will overrule this objection.

D. Objection No. 3: The Report Erred In Concluding That Plaintiff’s Constructive Discharge Proximatelg Resulted From Political Discrimination Permitted By The First Amendment.

Plaintiff also objects to the Report on the grounds that the magistrate judge erred in concluding that his constructive discharge was proximately caused by permissible actions under the First Amendment. Plaintiff contends that there is a question of fact as to whether his constructive discharge proximately resulted from privileged or non-privileged conduct by defendant. The magistrate judge rejected this argument, finding that because defendant had the right to discharge plaintiff, she also had the right to transfer him to a new position.
The Court has carefully reviewed this Objection and finds it to be without merit. It makes little sense to rule that plaintiff was subject to being discharged for political reasons, but once defendant took any action short of discharge, such as transferring him to a new position, plaintiff, upon realizing his dissatisfaction at his new job, could then claim that his transfer violated the First Amendment. To hold otherwise would subject defendant to greater exposure to liability even though she took a less drastic measure than was permitted by law. This would encourage newly elected public officials to discharge all affected employees rather than attempting to keep them employed in a different position. For these reasons and those expressed in the Report, the Court will overrule this Objection.

E. Objection No. 4: The Report Erroneously Granted Defendant Qualified Immunity Contrary To The First Amendment.

As an alternative basis for recommending that summary judgment be granted in favor of defendant, the magistrate judge concluded that even if the position of Legal Assistant is not one for which political affiliation is an appropriate requirement, defendant is entitled to qualified immunity. The Fourth Circuit, recently summarized the law of qualified immunity:
Qualified immunity shields a governmental official from liability for civil monetary damages if the officer’s “conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” “In determining whether the specific right allegedly violated was ‘clearly established,’ the prop: er focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.” Moreover, “the manner in which this [clearly established] right applies to the actions of the official must also be apparent.” As such, if there is a “legitimate question” as to whether an official’s conduct constitutes a constitutional violation, the official is entitled to qualified immunity.
Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994) (citations omitted).
The Court has carefully reviewed the recommendation concerning qualified immunity and concludes that it is proper. While it is true, as plaintiff argues, that in 1991 the First Amendment prohibited government officials from discharging certain employees solely because of their political affiliation, *726 even assuming that the Court has incorrectly applied the Elrod-Branti test, it was not clearly established that the position of Legal Assistant was not one for which political affiliation was a proper requirement. As Justice Scalia noted in his dissent in Rutan v. Republican Party of Illinois, 497 U.S. 62, 111, 110 S.Ct. 2729, 2756, 111 L.Ed.2d 52 (1990), the various interpretations of Branti by the circuit courts “are still so general that for most positions it is impossible to know whether party affiliation is a permissible requirement until a court renders its decision.” Similarly, the Fourth Circuit has noted that “[t]he task of determining whether a position is one in which political affiliation is a legitimate fact to be considered when making a personnel decision is admittedly difficult.” Stott I, 916 F.2d at 141. Thus, “[i]t is one thing to know the Elrod-Branti standard that governs political firings; it is quite another to be able to predict how it will be applied in a specific factual context.” Felton v. Board of Com’rs of Greene County, 796 F.Supp. 371, 380 (S.D.Ind.1991).[14] As the magistrate judge noted, the Fourth Circuit has indicated that a governmental official is not required to accurately predict the outcome of a future court decision in order to be entitled to qualified immunity. Akers, 998 F.2d at 227. Under the facts of this case, defendant is clearly entitled to qualified immunity.

IV. CONCLUSION

Having carefully reviewed the Report and specifically reviewed the Objections de novo, the Court hereby ORDERS on this the 25th day of February, 1994, at Columbia, South Carolina, that plaintiffs Objections be OVERRULED, the Report be ACCEPTED, and the motion for summary judgment be GRANTED.[15]

MAGISTRATE JUDGE’S REPORT AND RECOMMENDATION

McCRORY, United States Magistrate Judge.
This matter is before the court pursuant to defendant’s motion for summary judgment.[1] The summary judgment motion was filed on November 24, 1993, and plaintiff filed his memorandum in opposition to this motion on December 13, 1993.[2] Defendant filed a response on December 16,1993, and the undersigned heard oral argument in this matter on Friday, December 17, 1993. No further argument being necessary, this case is ready for this Report and Recommendation.
In the 1990 general election in South Carolina, Republican Dr. Barbara Nielsen, the defendant, was elected as Superintendent of Education for South Carolina. She defeated the Democratic incumbent, Dr. Charlie Williams. Plaintiff is one of several persons who have filed actions against Dr. Nielsen alleging political discrimination in some form after she took office. Rouse contends that he was constructively discharged by Nielsen in retaliation for, or because of, his political affiliation with Williams and the Democratic party, thereby violating 42 U.S.C. § 1983. *727 Rouse also alleges two state pendent actions for outrage and conspiracy. Defendant has answered with numerous defenses including the denial that plaintiff was discharged.
Rouse first began working for the Department of Education in July, 1970, and was appointed by Williams in March, 1979, to the newly created position of Legal Assistant to the Superintendent and Legislative Liaison.[3] Plaintiff held this position until Nielsen’s election. He testified that his duties included functioning as Williams’ “voice in the legislature” and that he reported directly to Williams. He further stated that his “basic functions all involved working around the legislature, the great majority of it. Even things I did back in the office revolved around that.” After assuming office in January, 1991, Nielsen informed Rouse that he would no longer represent the Superintendent before the legislature. His job title and descriptions changed, although his salary remained unaffected. Plaintiff notified the Department of Education on May 30,1991, that he was retiring effective June 30, 1991. He claims that he was deprived of his legislative liaison duties and given nothing meaningful to replace them and was therefore constructively discharged.
Defendant’s motion for summary judgment, rather than addressing the characterization of plaintiffs cessation of work for the Department Of Education, states that Nielsen is entitled to summary judgment even if plaintiff was constructively discharged. Defendant argues that, because of the political nature of plaintiffs position, his discharge did not violate any constitutionally protected right. She also contends she possessed qualified immunity as to this action. Last, defendant addresses the state pendent causes of action.

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled- to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). While plaintiff is entitled, as the non-moving party, to have the court construe all disputed facts, and all reasonable inferences drawn therefrom, in the most favorable light, Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party wishing to oppose summary judgment must present evidence tending to raise a material and genuine factual dispute. See Morrissey v. William Morrow & Co., 739 F.2d 962 (4th Cir.1984) cert. denied 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 340 (1985); Foy v. Norfolk and W.R. Co., 377 F.2d 243 (4th Cir.1967) cert. denied 389 U.S. 848, 88 S.Ct. 74, 19 L.Ed.2d 117 (1967); Bradford v. School District, 364 F.2d 185 (4th Cir.1966); and Sturdivant v. Medical Engineering Corporation, 121 F.R.D. 51 (D.Md.1988).

FIRST AMENDMENT CLAIM

At the outset, the undersigned examines plaintiffs claim that defendant should be barred from making her summary judgment argument because defendant failed to allege in her answer what plaintiff characterizes as an “affirmative defense,” i.e. that plaintiff was subject to termination due to political affiliation. Rouse would have the court hold that what he refers to as the “Elrod-Branti ” defense is an affirmative defense, that defendant failed to raise it, and that defendant cannot now raise the issue on summary judgment. The undersigned disagrees.
Defendant is simply doing what she is both required, see Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.), cert. denied — U.S. -, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991), *728 and permitted, see Barnes v. Hillhaven, 686 F.Supp. 311 (N.D.Ga.1988) to do at this stage, taking the facts in the light most favorable to the plaintiff. Nielsen is basically arguing that, even if Rouse was constructively discharged—a claim which is admitted for the purposes of summary judgment, defendant is still entitled to have her motion for summary judgment granted and to have this action dismissed. The undersigned finds nothing unusual in this practice and proceeds to examine this motion on its merits. See also Stott v. Martin, 783 F.Supp. 970, 992 and n. 22 (E.D.N.C.1992).

POLITICAL DISCHARGE

Plaintiff contends that he was constructively discharged because of his political affiliation in violation of Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In Elrod the Supreme Court “held that patronage dismissals of nonpolicymaking officials violated the First Amendment.” Akers v. Caperton, 998 F.2d 220, 224 (4th Cir. 1993). To summarize, a public employee cannot be discharged for purely political reasons absent some justifiable exception. To do so violates the employee’s First Amendment right. The Court stated its test for the exception in Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) “holding that the First Amendment barred patronage dismissal unless ‘party affiliation is an appropriate requirement for the effective performance of the public office involved.’” Akers, supra, 998 F.2d at 224. Defendant argues that even if this case involves a politically motivated discharge, it is one which was allowed under Branti. Nielsen also contends she is protected by the doctrine of qualified immunity.
As a threshold issue, the undersigned addresses plaintiff’s claim that the Elrod-Bran-ti line of cases does not apply because plaintiff was a “classified” state employee. Plaintiff cites South Carolina Code of Laws § 8-11-210, et seq. and the state regulations established thereto including Regulation 19-707.02(H), South Carolina Code Ann. Volume 23, to support his contention (1) that he was a “classified” state employee and (2) therefore he could be discharged only for cause and not for political reasons. He argues that by enacting these statutes and regulations South Carolina has created First Amendment rights to these employees. See Plaintiffs Memorandum in Opposition to Defendant’s Motion for Summary Judgment at p. 7.
While defendant does not dispute the fact that plaintiff was an employee covered by the state classification system, she argues that the plaintiff was not within the coverage of the state established merit system. Plaintiff did not disagree at the summary judgment hearing. The undersigned notes that in most of the applicable cases discussed infra, the state system in question was a merit system. Because the undersigned concludes that the court can dispose of plaintiffs objections even were there no difference, the undersigned does not address any potential differences between a classification system and a merit system with regard to political discharge.
In Akers, supra, which is the Fourth Circuit’s most recent discussion of the political patronage discharge issue, the court examined several politically motivated transfers in West Virginia. The Democratically controlled West Virginia legislature had amended the state civil service laws in an attempt to legislatively create a larger number of positions which would be subject to political discharge and appointment in preparation for the newly elected Democratic governor. The plaintiffs were then transferred to other positions. The defendants stipulated that these transfers were politically motivated. The court determined that, although the state legislature had concluded that political affiliation was important to plaintiffs’ positions, these transfers violated Branti. In a footnote the court dealt with the fact that West Virginia legislature had made a contrary determination. The court stated “Although legislative findings are given deference, ‘the matter is a question of law to be ultimately decided by the courts.’ ” Akers, supra, citing Stott v. Haworth, 916 F.2d 134, 142-143 (4th Cir.1990) (see discussion of Stott infra).
In a case cited by both plaintiff and defendant, the Third Circuit faced the political discharge issue where the employee was *729 within the coverage of a statute which provided that an employee could only be discharged for cause. Brown v. Trench, 787 F.2d 167 (1986). The plaintiff had pled a violation of her First Amendment rights pursuant to 42 U.S.C. § 1983 as well as a violation of her Due Process rights. The court determined that, pursuant to Branti, the plaintiff’s position was such that she could be discharged for political reasons without violating her First Amendment rights. .Although the court then determined that this termination had violated her Due Process rights, that portion of the decision, is inapplicable to the case at bar because plaintiff has not alleged a violation of his. Due Process rights.[4]
The undersigned concludes, therefore, that a court should view state legislative determinations of status to assist it in making its decision as to whether political affiliation is necessary, but that ultimately it is the United States District Court’s determination as a matter of law whether a particular position is such that it is subject to termination or transfer for political reasons based on Branti The undersigned thus examines Rouse’s position to determine whether his discharge violated his First Amendment rights.
In Branti the Supreme Court stated that “the ultimate inquiry is not whether the label ‘policymaker’ or ‘confidential’ fits a particular position; rather, the' question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.” Branti supra, 445 U.S. at 518, 100 S.Ct. at 1294. The Court then left it up to the district and circuit courts, to determine when party affiliation is an appropriate requirement. The Fourth Circuit, in Stott, supra, adopted the two prong test utilized by the First Circuit in Jimenez Fuentes v. Gaztambide, 807 F.2d 236 (1st Cir.1986), cert. denied 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). First the court must examine the position to determine whether it
relates to ‘partisan political interests ... or concerns’ ... That is, does the position involve government decision making on issues where there is room for political disagreement on goals or their implementation? Otherwise stated, do party goals or programs affect the direction, pace, or quality of governance?
If this first inquiry is satisfied, the next-step-is to examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement. We would note that in conducting this inquiry, courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office.
Stott, 916 F.2d at 141-142 (citations omitted).
The court stated further that “ ‘[political affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance.’” Id. Because the Fourth Circuit in Stott determined that the district court had erred in certifying a class of plaintiffs in this political patronage discharge case, the court remanded the case to the district court for a determination of each plaintiffs individual status. This decision is recorded at 788 F.Supp. 970 and will be referred to herein as Stott II. The undersigned has examined the court’s decision and reasoning in Stott II and relies heavily thereon.
In Stott II the court examined the First Circuit line of cases flowing from Jimenez Fuentes and discussed the impact these eases had upon its examination of the positions the individual plaintiffs held. The court ultimately granted the defendants summary judgment as to each of the three plaintiffs therein. The undersigned subjects Rouse’s claim to the same scrutiny.
Without question in South Carolina the position of Superintendent of Education is *730 one “in which there is room for political disagreement.” Stott II at 983. (In Stott II the court began by examining the political nature of the Agency or Board first and then the particular position held by the plaintiff). The Superintendent is elected in the statewide general election from among candidates who identify themselves with the various political parties. The undersigned takes notice that in the 1990 election at issue in this case, the election for the Superintendent of Education, was one of the more hotly contested races. Nielsen promised to restructure the existing education system. Since she was elected by the voters of South Carolina over the incumbent, the undersigned can only assume that the majority of voters in this state agreed with her political ideas and promise of change. Education is “ ‘undoubtedly [a] partisan issue.’” Id. (citations omitted) (See also S.C.Code Ann. § 59-3-10).
The undersigned next analyzes the particular position in question to determine whether the second prong of the Jimenez Fuentes test is met. “ ‘The focus of the second inquiry is whether the inherent responsibilities of the position are such that a politically disloyal occupant could thwart his agency’s goals regarding the programs and policies over which he has responsibility.’ ” Id. (citations omitted). The factors the court examined included whether the position in question included the
power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, responsiveness to partisan politics and political leaders, responsibilities that are not well defined or are of broad scope, input into hiring decisions, supervision of employees, development of office policies and practices, and communication with the public....
Id. at 982-983 (citations omitted).
As discussed briefly supra, Rouse was the Legal Assistant to the Superintendent and Legislative Liaison. Reproduced below from the defendant’s supporting memorandum pages 9-11 is the official “Position Description,” along with the twelve job tasks assigned thereto, according to exhibit number 5 to the plaintiffs deposition.
Under limited supervision provides professional legal advice to the State Superintendent of Education and serves as liaison between the State Department of Education and the General Assembly. Reports directly to the State Superintendent and Policy/Decision Making executive Staff.
Periodically represents the State Superintendent at a variety of meetings and provides liaison from the Department to a number of statewide organizations.
1. Routinely monitors and reports to the State Superintendent on the introduction and progress of legislation in the General Assembly effecting [sic] public school education.
2. Assists the State Superintendent in the development and expression of the Department of Education’s views, concerns and positions on educational legislation; clarifies, amplifies and justifies needs and requirements to appropriate legislative committees.
3. Maintains continuity in the exchange of information between the State Department of Education and the General Assembly regarding proposed public education legislation to promote cooperation and coordination of effort.
4. Represents and speaks directly to the State Superintendent and to all members of the General Assembly on policy decisions concerning public education and Agency operations.
5. Provides professional legal advice to the State Superintendent and the State Board of Education.
6. Conducts legal research and interprets school laws, rules and regulations.
7. Coordinates with the Attorney General’s Office in obtaining opinions relevant to public education.
8. Provides liaison between the Legislative Committee of the State Board of Education and the State Department of Education and the General Assembly.
9. Annually establishes and maintains for the Department a central file of legislative inquiries, requests, and other com- ■ munications.
*731 10. Provides liaison between the State Superintendent and a number of educational, legal and economic organizations (i.e., School Boards Association, South Carolina Bar and S.C. Council on Economic Education).
11. Accompanies or represents the State Superintendent at a variety of state meetings, seminars, conventions, and workshops.
12. Assists the State Superintendent in response to letters and telephone communications.
The Stott II court found it very important with each individual that he had significant power, authority or opportunity to communicate with the media, public and elected officials.[5] A review of Rouse’s “Position Description” and twelve job tasks clearly indicates that his position was one which had the power, authority, opportunity, and indeed responsibility for communicating with the South Carolina legislature on behalf of the Superintendent. His “Position Description” states that he was a “fully participating member of the Policy/Decision Making Executive Staff.” These and numerous other duties listed support defendant’s argument that the position of Legal Assistant to the Superintendent and Legislative Liaison [Legal Assistant] is one which requires the “political sympathy and loyal cooperation” of this office holder to the policies of the Superintendent. Id. at 989. This position “‘offer[s] considerable opportunity to effectuate or to hinder the implementation of [the Superintendent’s] programs and policies.’ ” Id. The undersigned concludes that the position of Legal Assistant is one in which political affiliation is an appropriate requirement.
Plaintiff has argued that he was transferred not merely because he was a Democrat, but also because he actively supported the incumbent Superintendent, Mr. Williams. Rouse argues, therefore, that the Elrod-Branti test is inapplicable to this case. The court in Stott II considered this very argument concerning the motive for the discharge. Relying again on First Circuit case law, the court stated:
[I]f ‘plaintiff’s position is indeed one for which political affiliation would have been a legitimate requirement,’ his dismissal does not violate the First Amendment even if he actually “was fired for his political activity, not for affiliation.’ Therefore, that the motive behind the discharge was retaliation for the employee’s support of certain candidates, rather than an innocent desire to achieve loyal implementation of a new administration’s programs and policies, is immaterial. Hence, even if [defendants] set out to punish Democrats who supported [the newly elected official’s] adversary, so long as those who they discharged held positions for which political affiliation, is an appropriate requirement, they could be lawfully fired notwithstanding the First Amendment,...
Id. at 993 (citations omitted).
The undersigned agrees with the Stott II reasoning and decision and hereby adopts it as it applies to Rouse’s claim of retaliation.
Plaintiff also apparently argues that the Elrod-Bmnti analysis is inapplicable because this is a constructive discharge case. The undersigned disagrees. As has been examined supra, the defendant’s “pure” discharge of the plaintiff would not violate plaintiff’s constitutional rights because it fell within the Branti “political affiliation” exception. To the extent it is the transfer to another position which plaintiff contests, the Court in Rutan held that the Elrod-Branti rule, and implicitly its exception, applied in cases where the employee was transferred and not terminated. The defendant’s actions would thus be justified in a “pure” transfer case under these circumstances. Plaintiff, however, seeks to short circuit the Branti exception by arguing that Branti does not apply to a “constructive” discharge case which involved a transfer. According to plaintiffs reasoning, an employee who was transferred from a position where political affiliation was *732 important to one where it was not, would have suffered no constitutional deprivation;however if that same employee quit after transfer he would, according to plaintiff, have a cause of action for constructive discharge based upon political discrimination.
A reading of plaintiffs complaint indicates that plaintiff himself views everything which happened not as several distinct and unrelated actions, but rather as an interrelated “campaign to remove him” because of his relationship to Williams and the Democratic party. Plaintiffs testimony at his deposition also supports this conclusion.[6] Therein plaintiff discusses his complaints and the basis for his allegations of constructive discharge. (See generally pages 130-136). To summarize plaintiff states that he:
(1) was reassigned without notice or discussion of new responsibilities;
(2) was not given the opportunity to apply for the new high level executive positions;
(3) had to change offices several times (others were also moving during the transition period);
(4) was without a secretary for a period of time;
(5) had no private telephone line for a period of time;
(6) was assigned to report to different individuals; and
(7) was given only “minor menial assignments” and was not allowed to appear in the legislature.
Each of these complaints appear to be directly related to plaintiffs physical move from one location within the department to another, personnel changes of high level executives and support personnel during the transition period, and most importantly to plaintiff his transfer from his position as legislative liaison. Simply put, plaintiffs responsibilities changed, and he did not like his new position. Apparently plaintiff believes that his transfer to a position of less responsibility amounts to constructive discharge.
The undersigned refuses to accept plaintiffs argument and concludes that the Branti exception applies to constructive discharge cases such as the case alleged by plaintiff. Plaintiff was entitled to transfer defendant to his new position and such transfer did not amount to a constructive discharge.

QUALIFIED IMMUNITY

As stated supra, defendant alleges that she is immune from personal liability under the doctrine of qualified immunity. “The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual’s federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.” Akers, supra, 998 F.2d at 225, 226. The Supreme Court, in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) established the standard which the court is to follow in determining whether defendant is protected by this immunity. “Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Akers, 998 F.2d at 226 citing Harlow, supra, 457 U.S. at 818, 102 S.Ct. at 2738.
The First Circuit, discussing this issue in the context of political discharge cases in Nunez v. Izquierdo-Mora, 834 F.2d 19 (1987), stated “ ‘there was no clearly established constitutional protection against patronage dismissal ... for those individuals whose positions potentially concerned matters of partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential information, or official communication.’ ” Id. at 21 (citations omitted). It also stated that “ ‘defendants will normally enjoy qualified immunity from damage liability in upper level, managerial-type j°b dismissal cases, cases where the jobs in question are not purely technical or scientific in nature.’ ” Id.
*733 Having already concluded that the defendant did not violate plaintiffs First Amendment rights even if he was constructively discharged, the undersigned addresses this qualified immunity claim as an alternative reason supporting this recommendation. Should the court determine that the position of Legal Assistant to the Superintendent and Legislative Liaison not be one in which the political affiliation of the office holder is a requirement, Nielsen would nevertheless be immune from individual liability because it was not clearly established in 1991 that discharging someone form the Legal Assistant and Legislative Liaison position for political reasons violated that person’s First Amendment rights. This conclusion is supported by the Nunez case, supra, and is reasonable because to determine that Nielsen could not discharge Rouse from this position is necessarily to characterize this case as a very “close call” and Nielsen is not required to “accurately predict the outcome” of a future court decision. Akers, supra, 998 F.2d at 227 (citations omitted).
The undersigned lastly addresses the plaintiffs pendent state law claims for intentional infliction of emotional distress (outrage) and for conspiracy. Both of these claims fail because they rely on the faulty assumption that defendant’s actions were constitutionally forbidden. The undersigned having recommended that the court determine that Nielsen’s action were constitutionally permitted, it recommends that the court grant summary judgment on the state causes of action. Because Nielsen’s actions were constitutional, plaintiff fails to state a claim for outrage because defendant’s conduct cannot be characterized as “atrocious” or “utterly intolerable” as is required under South Carolina law.[7] See Corder v. Champion Road Machinery International Corp., 283 S.C. 520, 522, 324 S.E.2d 79 (1984). Likewise, plaintiffs conspiracy claim also fails pursuant to Todd v. S.C. Farm Bureau Mutual Insurance Cos., 276 S.C. 284, 278 S.E.2d 607 (1981) because it merely restates the first cause of action for a § 1988 violation.
Accordingly, the undersigned hereby RECOMMENDS the court grant defendant’s motion for summary judgment.
January 5, 1994
Columbia, South Carolina

ON MOTION TO ALTER OR AMEND

SHEDD, District Judge.
This matter is before the Court on plaintiffs Motion to Alter or Amend the Judgment entered in favor of defendant by Order dated February 25, 1994. After carefully reviewing the record and the controlling legal authorities, the Court concludes, for the reasons set forth below, that the motion should be denied.
I
In the February 25 Order, the Court overruled plaintiffs Objections and accepted the Report and Recommendation (“the Report”) filed by. Magistrate Judge McCrprey and granted summary judgment in favor of defendant on all causes of action based on the merits of those claims and on the defense of qualified immunity.[1] Pertinent to the motion to alter or amend the judgment, the Court ruled that plaintiffs alleged constructive discharge was proper under Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), in which the Supreme Court held that the First Amendment prohibits a government official from discharging a public employee for the sole reason that the employee did not support the political party in power, unless, the official can show that party affiliation is an appropriate requirement for the position involved. In doing so, the Court rejected plaintiffs contention that his status as a classified state employee was completely disposi-tive as to the Elrod-Branti analysis.
*734 The Court further ruled, in response to plaintiffs specific Objections, that there was insufficient evidence in the record presented to support plaintiffs “alternative” claim that he was discharged because of his political speech. Plaintiff had argued in his Objections that the Court should have viewed this “alternative” claim under the analysis established in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); and Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In Pickering and Connick, the Supreme Court held that a public employee may not be discharged for the expression of ideas on a “matter of legitimate public concern,” Pickering, 391 U.S. at 573-74, 88 S.Ct. at 1737-38; unless the public employer’s “interest in the effective and efficient fulfillment of its responsibilities to the public” outweighs the employee’s interest in free expression of the ideas. Connick, 461 U.S. at 150, 103 S.Ct. at 1691-92.
II
Rule 59(e) of the Federal Rules of Civil Procedure provides a mechanism for an aggrieved party to petition the Court to alter or amend a judgment under certain limited circumstances. The purpose of a Rule 59(e) motion “is to allow the court to reevaluate the basis for its decision.” Keyes v. National R.R. Passenger Corp., 766 F.Supp. 277, 280 (E.D.Pa.1991). Because of the interests in finality and conservation of judicial resources, Rule 59(e) motions should be granted sparingly. Pennsylvania Ins. Guar. Ass’n v. Trabosh, 812 F.Supp. 522, 524 (E.D.Pa.1992). Thus, Rule 59(e) motions “are not at the disposal of an unsuccessful party to ‘rehash’ the same arguments and facts previously presented,” Keyes, 766 F.Supp. at 280; and “cannot be used to raise arguments which could, and should, have been made before the judgment issued,” F.D.I.C. v. Meyer, 781 F.2d 1260, 1268 (7th Cir.1986); or to submit evidence which should have been previously submitted. Borran v. United States, 884 F.2d 767, 771 (4th Cir.1989). Instead, a motion may be properly made under Rule 59(e) for only one of three reasons: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir.1993); Weyerhaeuser Corp. v. Koppers Co., 771 F.Supp. 1406, 1419 (D.Md. 1991).
Ill
Plaintiff does not argue either that an intervening change in law has occurred or that evidence which was not previously available has now become available. Instead, plaintiff first contends that the Court erred by ruling on his Pickering-Connick claim because defendant did not move for judgment on that claim, the Court did not provide him notice of its intention to rule thereon,[2] and there was evidence in the record to support that claim in any event. In addressing these contentions, it is necessary for the Court to detail pertinent portions of the record which clearly demonstrate their lack of merit.
A.
The Court has previously noted that plaintiff did not specifically allege in his pleadings or his answers to Local Rule 7.05 (D.S.C.) interrogatories that defendant discharged him because of any political speech in which he may have engaged. See Feb. 25, 1994, Order, at 4 n. 4. Indeed, as plaintiff indicated in his answers to the interrogatories,[3] his claims in this case appear to be based solely on his political affiliation:
(a) “WHAT YOU CONTEND THE DEFENDANT DID”:
The self-admitted Republican defendant took office in January 1991 as the new State Superintendent of Education. Until *735 that time, plaintiff was a Special Assistant for legal and Legislative affairs under Dr. Charlie Williams, a Democrat. Defendant promised in her campaign to rid the Department of Williams’ cronies and associates. Once defendant was sworn in, she targeted the plaintiff and other classified state employees who were Democrats and worked close to Williams, and forced the plaintiff to retire in just six months. This plaintiff is a Democrat and worked close to Williams in his administration and was a classified state employee. Defendant took away the plaintiffs duties and gave him the “Siberia treatment” to make him retire. The defendant instituted her actions for political reasons and as part of an improper scheme to bring in her own political cronies and to eliminate certain Democratic classified state employees. In interviews, she admitted that she expected persons like plaintiff to give up their positions after the election. She believed that to the victor go the spoils and ignored the rights of classified employees in South Carolina. Here, defendant sought spoils to which [sic] she was not entitled and which were prohibited by both state and federal law. The plaintiffs 21-year career at the Department was snuffed out with impunity by the defendant. But the plaintiff was not alone.
Other employees similarly situated were uprooted from their positions through the actions of the defendant’s corrupt transition team, which employed any' means and method to carry out improper and clearly political actions.
PlAns. to Rule 16(b) Interrogs., at 1-2.[4]
In the motion for summary judgment, defendant set forth as the first of three grounds for the motion that plaintiffs Section 1983 claim “fails because he could be lawfully discharged because of his political affiliation.”[5] As the Court has previously noted (see Feb. 25 Order, at 4), defendant, in her memorandum in support of the motion for summary judgment, stated that for purposes of the motion, she assumed arguendo “that Rouse was constructively discharged because of his political affiliation as he claims.” Memo. In Support of Def. Mot. For Sum. Judg., at 4 n. 2. Defendant argued inter alia in her memorandum that plaintiffs Section 1983 claim must fail under the El-rod-Branti line of cases. Defendant did not address the Pickering-Connick line of cases in this memorandum.
In his memorandum in opposition to the motion for summary judgment, plaintiff argued in pertinent part that the motion should be denied because (1) he “was a classified state employee, subject only to discharge for cause and protected from political discrimination;” (2) his constructive discharge by defendant was based on “his protected first amendment activities”[6] which could not be supported under Elrod and Branti; and (3) he was constructively discharged “for partisan political reasons from a position which in no way involved affiliation with defendant Nielsen’s party which totally violated [his] constitutional rights.” Pl. Memo, in Opp. to Def. Mot. for Sum. Judg., at 4, 8, 15.[7] Plaintiff did not argue with any specificity in this memorandum that he had a viable claim of being discharged because of his political speech; indeed, plaintiff nowhere cited , the Pickering-Connick line of cases. Instead, as the Court noted in the February 25 Order at page 10, the only reference that plaintiff made to evidence which seems to support a “political speech” claim is the following statement:
*736 Moreover, Legrand A. Rouse, II was a political supporter of Dr. Charlie Williams, the incumbent superintendent who was defeated by Defendant Nielsen and, limited to the confines of the state’s own regulations dealing with employee conduct during election, was openly supportive of his candidacy and, indeed, may have indicated to others that Defendant Nielsen’s qualifications were far less than those of Superintendent Williams’. (Rouse Deposition, p. 86, lines 11-24).
PI. Memo, in Opp. to Def. Mot. for Sum. Judg., at 2.[8]
Although it is clear from the record that plaintiff had not, to that point, set forth a “political speech” claim in writing, he must have argued it in some context—either orally before Magistrate Judge McCrorey in this case or in a related case involving another former Department employee[9]—because defendant, in her reply memorandum, which bears the caption of this case and the Phillips case, specifically argued that plaintiffs in both cases could not invoke Jones v. Dodson, 727 F.2d 1329 (4th Cir.1984), to defeat summary judgment. Defendant asserted that Jones, which the Court has addressed in detail in the February 25 Order, was inapplicable because neither plaintiff had pleaded that they were discharged for political speech and because both plaintiffs were subject to discharge under the Elrodr-Bmnti line of cases. Defendant also responded to several other arguments in her reply memorandum.
Magistrate Judge McCrorey thereafter filed the Report in which he recommended that defendant’s motion for summary judgment be granted. Magistrate Judge McCro-rey concluded inter alia that plaintiff was subject to discharge under Elrod-Branti principles and, consequently, it is immaterial if he also was discharged because of his political support of Dr. Williams. Report, at 14.[10] Magistrate Judge McCrorey did not specifically address Jones in this analysis but, instead, relied upon Stott v. Martin, 783 F.Supp. 970 (E.D.N.C.1992), which is a case that is factually similar to the instant one.
In his Objections to the Report, which the Court specifically addressed in the February 25 Order, plaintiff argued inter alia that Magistrate Judge McCrorey erred in this conclusion. Plaintiff devoted over five pages to this issue in his Objections, and another five pages to a summary of his version of the facts. However, nowhere did plaintiff point to any portion of the record which supports his claim that he was discharged for political speech.
In the February 25 Order, the Court, as noted above, recognized that defendant conceded for purposes of the motion that plaintiff’s claim that she discharged him based on his political affiliation was true. Moreover, despite plaintiffs failure to affirmatively plead that he was discharged because of his political speech, the Court recognized that defendant was aware that plaintiff was claiming that he was discharged because of his political speech as well as his political affiliation. See Feb. 25 Order, at 4 n. 4. Therefore, the Court did not preclude plaintiff from pursuing that assertion. The Court then analyzed plaintiffs Objection concerning the applicability of Jones (and Pickering and Connick) and found that although Jones would require application of Pickering-Con-nick principles rather than Elrod-Branti principles where the facts of the case support a claim that the discharge was for political *737 speech, plaintiff had failed .to present sufficient evidence to support such a claim.
B.
The essence of plaintiffs argument may be summarized as follows: defendant did not move for summary judgment on plaintiffs political speech claim; the Court, acting sua sponte, granted summary judgment in favor of defendant on the political speech claim; the Court did so without providing plaintiff with an opportunity to respond on that claim; the entry of summary judgment on that claim was therefore improper. Plaintiff cites several eases which state the correct, but inapplicable, principle of law that the Court may not sua sponte grant summary judg-, ment against a party without providing that party an opportunity to be heard prior to the entry of summary judgment. Plaintiffs reliance on this principle is misplaced because the Court did not act sua sponte in granting summary judgment in favor of defendant on the political speech claim. As the Court noted in the February 25 Order:
Defendant’s motion for summary judgment is directed at plaintiffs case in its entirety. Therefore, in response to the motion, it is incumbent upon plaintiff to produce sufficient evidence to withstand the motion in all respects. It is not the Court’s duty to search the record to ascertain whether it is bereft of a genuine issue of material fact. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir.1989). Under Jones, in order for plaintiff to fall under the Pickering-Connick analysis and avoid application of the Elrod-Branti test, he is required at this stage of the proceedings to come forward with sufficient evidence in the record from which a trier of fact could reasonably conclude that he was discharged for engaging in protected speech—that is, expressing his support for Dr. Williams, who was defendant’s election opponent.
Plaintiff has failed to meet his burden. Plaintiff has pointed to no evidence in his Objections memorandum which tends to establish that he was constructively discharged because of his alleged political speech. While plaintiff did cite a portion of his deposition testimony for this proposition (presumably) at page 2 of his memorandum in opposition to the motion for summary judgment, the Court has reviewed the cited testimony and concludes that it fails to meet plaintiffs burden as a matter of law. Plaintiffs deposition testimony is not sufficient evidence to establish that plaintiff actually engaged in protected speech. Moreover, even assuming that this testimony is sufficient to establish that plaintiff engaged in protected speech, there is no showing that defendant was aware of the speech or that she considered it in making the decision to transfer plaintiff.
Feb. 25 Order, at 9-10.
Plaintiffs current assertion that he was unaware that the political speech claim was being challenged in the summary judgment motion is disingenuous.[11] Defendant moved for summary judgment arguing that plaintiffs Section 1983 claim, which from the Complaint only appeared to be a political affiliation claim, could not stand under the Elrod-Branti principles. If defendant was (as he later proved to be) correct, then plaintiffs Section 1983 claim would be dismissed. In an effort to defeat this argument and to save his claim, plaintiff (not the Court) raised the political speech claim and argued at length that Jones required application of Pickering-Connick principles rather than El-rod-Branti principles. As a result, the Court was required under Jones to review the evidence presented by plaintiff to ascertain whether the Pickering-Connick line of cases was in fact applicable; that is, whether there was evidence to establish that defendant discharged plaintiff for political speech. *738 As noted, the Court found plaintiffs presentation of the facts to be insufficient in this regard.[12]
While plaintiff now contends that he was not on notice that he had to come forward with such evidence, his purported lack of “notice” stems not from the actions of the Court but, instead, from his lack of understanding of the duties imposed by Rule 56. A party may not, as plaintiff seems to assert, attempt to defeat summary judgment by merely arguing that one legal theory (i.e Pickering-Connick) precludes the application of another potentially dispositivé legal theory (i.e., Elrod-Branti) without coming forward with evidence to demonstrate that the first (and presumably controlling) theory is even applicable. To hold otherwise would not only be in contravention of Rule 56, which imposes an affirmative duty on the non-moving party to come forward and show that there is a genuine issue of material fact for trial, see Atkinson v. Bass, 579 F.2d 865, 866 (4th Cir.), cert. denied, 439 U.S. 1003, 99 S.Ct. 615, 58 L.Ed.2d 679 (1978) (“positive action” is “demanded” of the non-moving party); but it would also make a mockery of the summary judgment procedure.[13]
C.
Plaintiff also argues that notwithstanding the foregoing, the Court improperly granted summary judgment in favor of defendant because he did present evidence to' support his political speech claim. Plaintiff first contends in this regard that defendant “stipulated” that she discharged him not only for his political affiliation, but also for his political speech and, therefore, the Court could not find that there was insufficient evidence to support the political speech claim. Contrary to plaintiffs assertion, there is nothing in the record which indicates that defendant stipulated to the factual basis of the political speech claim. Instead, as noted above and in the February 25 Order, defendant stated that she “assumes arguendo that Rouse was constructively discharged because of his political affiliation as he claims.” (emphasis added). To the extent that this concession may be termed a “stipulation,” the Court notes that it was entirely proper for defendant to stipulate for purposes of the motion to certain facts yet contest others. The Court further notes that it would be entirely improper, as plaintiff appears to be asking, to hold defendant to a stipulation which she did npt clearly make.
Plaintiff also contends that there was sufficient evidence in the record to support his speech claim. Plaintiff points generally to the “banana list” and the testimony of Warner Montgomery, and argues that a jury could draw an inference from this evidence that defendant discharged him because of his political speech.[14] While plaintiff did cite certain portions of the record which concerned the “banana list” in his summary judgment papers, he did not present any specific evidence which links the “banana list” to his alleged political speech as opposed to (possibly) his political affiliation. Likewise, while plaintiff cited certain portions of Mr. Montgomery’s deposition testimony in *739 his papers, this evidence is insufficient to support plaintiffs political speech claim.[15]
IV
Finally, plaintiff contends that the Court erred by “refusing to accord absolute and dispositive deference” to his status as a classified employee under state law. Both Magistrate Judge McCrorey and the Court have previously considered and rejected this issue based on the law of the Fourth Circuit, which is clearly contrary to plaintiffs contention. In the motion to alter or amend the judgment, plaintiff cites for the first time[16] the case of Gregory v. Ashcroft, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), which he argues supports his contention. The Court has reviewed Gregory and finds it to be inapposite. Therefore, the Court will deny the motion to the extent that it is premised on this ground.
V
Based on the foregoing, the Court hereby ORDERS on this the 17th day of March, 1994, at Columbia, South Carolina, that the Motion to Alter or Amend the Judgment be DENIED.

. The Court referred this case to United States Magistrate Judge Joseph R. McCrorey for pretrial proceedings pursuant to 28 U.S.C. § 636(b) and Local Rule 19.02 (D.S.C.).

. The Court's obligation to make a de novo determination of the properly contested portions of the Report does not require that the Court conduct a de novo hearing on the matter. United States v. Raddatz, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412-13, 65 L.Ed.2d 424 (1980).

.In her reply memorandum in support of the motion, defendant asserts at page 6 that plaintiff did not plead that he was discharged for political speech. The Court has reviewed the Complaint and plaintiff's answers to Local Rule 7.05 (D.S.C.) interrogatories and notes that it does not appear as though plaintiff specifically pled such a claim. However, at page 1 of her memorandum in support of the summary judgment motion, defendant indicates her awareness that plaintiff's *721 claim is, in part, based on his belief that he was discharged for supporting Dr. Williams, which implicates his right of political speech.

. Plaintiff did not object to this conclusion. After carefully reviewing this issue, the Court con-eludes that it is proper. Therefore, the Court will grant summary judgment in favor of defendant on all claims to the extent that they are brought against her in her official capacity.

.In Rodriguez, the First Circuit set forth its analysis to be applied in cases involving a discharge motivated by partisan political activities. In doing so, the court noted the approach set forth in Jones is not "entirely satisfactory.” 808 F.2d at 144 & n. 6. Thereafter, the court held in relevant part:
If the court [on remand] finds that plaintiff's position is indeed one for which political affiliation would have been a legitimate requirement ..., the court should find that dismissal here was constitutionally permissible and enter judgment for defendant. This is so even though Rodriguez was fired for his political activity, not affiliation.
808 F.2d at 144.

. A separate “mixed motives” analysis may be necessary if warranted by the evidence. The Court will not address that analysis since neither party contends that it is applicable.

. Depending upon the evidence in the record, the Court either applies Elrod-Branti or Pickering-Connick, but not both. Therefore, plaintiff's argument that the Court should apply the Picker *723 ing-Connick test to his "alternative” free speech claim is not correct. The Court notes that this confusion concerning Jones underscores the unsettled nature of this area of the law. See infra Part III-E.

. • Plaintiff cited page 86 of his deposition testimony:
Q: Let’s go to the point in time when the election took place and—well, let me back up for just a second. During the campaign did you express any opinions about Dr. Barbara Nielsen and what kind of job you thought she would do or make any comments like that, that you can recall, during the campaign, I’ll say up to the date of the election?
A: [by plaintiff] Again, I don’t remember specific comments but I would certainly be less than candid if I said I didn’t make any because I'm sure I made some comments. I feel very strongly that Dr. Williams was extremely well qualified; and on the other hand, I didn’t feel like she was. And, you know, with that personal feeling it would have made sense that I would have made some statements along the line in some circumstances and some opportunity [sic] and make an expression about how I felt about the qualifications of the two candidates. I don’t think I ever made any statement, you know, that imputed in any way on her integrity or her honor or anything else but simply based upon how I perceived qualifications for the top chief office in the state.

. In any event, it is questionable whether the Pickering-Connick test would aid plaintiff. As set forth below, the Court concurs.with the magistrate judge's determination that plaintiff's discharge was proper under Elrod-Branti. In Jones, the Fourth Circuit recognized that the Elrod-Branti test was more narrow than the Pickering-Connick test. 727 F.2d at 1334-35 n. 6. It is puzzling to say that defendant could lawfully discharge plaintiff for the reason that he was, a Democrat, but she could not discharge him for the reason that he was a Democrat and he publicly supported Democratic candidates. Cf. Stott v. Haworth, 916 F.2d 134, 141 n. 9 (4th Cir.1990) ("if the district court finds that a plaintiff held a position not subject to patronage dismissal [under Elrod-Branti ], then an inquiry based on the Pickering ... and Connick ... line of cases may be necessary”). Such a view would encourage an employee who is undoubtedly subject to discharge for political reasons under El-rod-Branti to campaign openly against his putative employer regardless of whether he actually supports the incumbent, employer since, by campaigning, the employee would secure his otherwise tenuous employment status.

. Plaintiff contends that pursuant to S.C.Code Ann. §§ 8-11-210 et seq.; and S.C.Reg. 19-707.-02(H), the state has determined that the position of Legal Assistant is not one subject to discharge for political reasons but, instead, is protected by the First Amendment.

. Plaintiff also cites Johnson v. Bergland, 586 F.2d 993 (4th Cir.1978), in which a divided panel of the Fourth Circuit held that the plaintiff was entitled to a preliminary injunction prohibiting the government from removing him from his position at least in part because the plaintiff held a classified position which the federal government had defined as one " 'other than those of a confidential or policy-making character.' " 586 F.2d at 995 (quoting 5 C.F.R. § 6.2 (1978)). While the facts and limited holding of Johnson lend some support to plaintiff's argument, the majority in Johnson did not, as plaintiff urges the Court to do, hold that the legislative classification was entitled to absolute deference. To the extent that Johnson could be read as standing for the "absolute deference” proposition, the more recent Fourth Circuit cases discussed in the text are to the contrary.

. As noted in Part I supra, the Court's primary focus in this review is to analyze de novo plaintiff's specific Objections, which, in this instance, relate to the issue of "absolute deference.” At page 8 of the Report, the magistrate judge recognized that some deference is to be accorded to legislative employee classifications. The magistrate judge thereafter properly viewed the specific nature of the position of Legal Assistant under Stott I and concluded that the position was one for which political affiliation was an appropriate requirement. It is therefore clear that while the magistrate judge gave the legislative classification some deference, he determined that the legislative classification itself is not controlling.

. The magistrate judge did note at page 13 of the Report that plaintiff's position description states that he was a "fully participating member of the Policy/Decision Making Executive Staff.”

. One circuit court has indicated that under Elrod and Branti, "it is difficult to imagine how any plaintiff ... could have a clearly established right to he free from patronage dismissal unless a nearly identical case had already been decided.” Pounds v. Griepenstroh, 970 F.2d 338, 341 (7th Cir.1992), cert. denied, -U.S. -, 113 S.Ct. 1256, 122 L.Ed.2d 654 (1993).

. Plaintiff did not object to the recommendation that the tort claims must fail based on the conclusions concerning the First Amendment claims. Because the Court concludes that this is the proper recommendation. Therefore, the Court will enter summary judgment on these claims.

. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 19.02(B)(2)(F), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

. Although plaintiff in the caption of this lawsuit states that this action is against defendant individually and in her official capacity, the undersigned notes that the plaintiff has made no allegation against the defendant in her official capacity and has requested damages only as to her individual capacity. Also, plaintiff seeks monetary relief only and not injunctive relief. Any attempt to pursue defendant in her official capacity would be barred pursuant to Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45, (1989). The undersigned therefore recommends that this action be dismissed as to Nielsen in her official capacity.

. The facts recited herein are taken from the memoranda of both parties which rely on the deposition of Rouse.

. The Brown court, examining state law pursuant to Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), determined that the statute in question created an expectation in continued employment thereby creating a property interest necessitating a hearing before she could be terminated.

. "He was also given powers to speak in the name of policymakers to the news media and the public and had significant contact with elected officials and the public.” Id. at 970. "[He] has the authority to speak in the name of the Commissioner before the legislature....” Id. at 988. "[H]e regularly addresses the news media and the public. He has the authority to speak in the name of policymakers with judges, court personnel, and related agency employees.” Id. at 992.

. Portions of plaintiff's deposition are attached as an exhibit to his Memorandum in Opposition to Defendant's Motion for Summary Judgment.

. This same result should apply even if this case is decided on defendant’s qualified immunity grounds.

. Even assuming arguendo that plaintiff’s motion to alter or amend the judgment is granted, it would not nullify the Court's determination concerning qualified immunity, a defense which is, by itself, dispositive of this case.-

. Plaintiff characterizes the Court's grant of summary judgment as being sua sponte.

. Local Rule 7.05(a) requires the plaintiff to "[s]tate with particularity what you contend the defendant did, or failed to do, which entitles you to obtain the relief you seek in this action." Local Rule 7.13 mandates that all answers to Local Rule 7.05 interrogatories "must be answered fully” in accordance with Rules 11 and 33, F.R.C.P.

. It is interesting to note plaintiff's use of the phrase “to the victor go the spoils” in describing defendant's motive. That phrase has been used by courts to describe the practice of political patronage. See Rutan v. Republican Party of Ill., 497 U.S. 62, 64, 110 S.Ct. 2729, 2731-32, 111 L.Ed.2d 52 (1990); Akers v. Caperton, 998 F.2d 220, 224 (4th Cir.1993).

. The other two grounds related to defendant's assertion of qualified immunify and to plaintiff’s state law claims.

. In the text of this part of the memorandum, plaintiff nowhere cites any portion of the record which supports his contention that he engaged in, and was discharged because of, political speech. Of course, political patronage discharges are subject to first amendment scrutiny.

. This citation refers to the headings which plaintiff used for different sections of the memorandum.

.In footnote 8 of the February 25 Order, the Court quoted the deposition testimony to which plaintiff referred. While plaintiff states that this testimony indicates that he “openly supported" Dr. Williams, there is nothing in this passage of the deposition to support that assertion. What plaintiff did say in this passage, and it is hardly material evidence of any significant issue, is that “it would have made sense that I [plaintiff] would have made some statements along the line in some circumstances and some opportunity [sic] and make some expression about how I felt about the qualifications of [defendant and Dr. Williams].”

. In footnote 1 (page 17) of his memorandum in opposition to the summaiy judgment motion, at a point where he is addressing the issue of qualified immunity, plaintiff stated that he incorporated by reference his arguments in the case of Phillips v. Nielsen, C.A. No. 3:92-628-19BC (D.S.C.).

. Magistrate Judge McCrorey did not address whether plaintiff has presented sufficient evidence to support that claim but, rather, ruled as a matter of law based on Elrod-Branti.

. It is actually astounding that plaintiff makes this assertion. Because plaintiff never pled or otherwise described his political speech claim, defendant is the party who was perhaps surprised in this case. As noted, although defendant objected to plaintiff's assertion of this claim during the summary judgment stage, the Court considered this claim based on an implicit recognition by defendant that she was aware that a political speech claim was .involved in this case in some fashion. Had the Court not made this determination, plaintiff would halve been barred from even arguing his political speech claim.

. The Court must emphasize that plaintiff raised the Jones issue with Magistrate Judge McCrorey before the Report was filed and, after Magistrate Judge McCrorey filed the Report, plaintiff, with knowledge that his case was recommended for dismissal, raised the issue with the Court. Therefore, plaintiff's reliance on those cases in which a party has been truly surprised by entry of summary judgment is misplaced. See, e.g., Texas Commerce Bank Nat’l Ass'n v. Capital Bancshares, Inc., 907 F.2d 1571, 1575-76 (5th Cir.1990).

. Where, as here, the nonmoving party bears the burden of proof on an issue, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence pf an element essential to its case. Nebraska v. Wyoming, — U.S.-.-,’ --, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993). The nonmovant may not merely rely upon the allegations in the pleadings but, instead, must .come forward with specific facts in the record to support its claim. Lujan v. Defenders of Wildlife, —• U.S.-,-, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). It is not the Court's duty to go beyond the evidence which the parties present and sift through the record to ascertain whether there are genuine issues of material fact in dispute. Street, 886 F.2d at 1479-80.

.The Court notes that plaintiff has still failed to point to any specific material evidence in the record to substantiate his political speech claim.

. While plaintiff has pointed to this evidence as support for his political speech claim, this evidence, at best, creates nothing more than mere speculation or conjecture that defendant discharged him for political speech. An inference based upon speculation or conjecture is not sufficient to defeat a motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir.1990).

. Plaintiff does not explain in the motion why he has not previously cited Gregory. It is, of course, the duty of an attorney to research and present the Court with citations to controlling authority. Vargas v. McNamara, 608 F.2d 15, 19 (1st Cir.1979). Although plaintiff's counsel has not previously cited Gregory, the Court is bound to follow that decision to the extent that it is applicable.