**Ernesto NUNEZ, et al., Plaintiffs, Appellees,**

v.

**Luiz IZQUIERDO–MORA, etc., et al., Defendants, Appellants.**

**No. 87–1132.**

United States Court of Appeals, First Circuit.

Submitted Sept. 18, 1987.

Decided Nov. 30, 1987.

Jose Luis Gonzalez Castaner, Marcos A. Ramirez Irizarry, Ramirez & Ramirez, and

Hector Rivera Cruz, Secretary of Justice, Hato Rey, P.R., on brief, for appellants.

Miguel Gimenez–Munoz, on brief, for appellees.

Before BOWNES, BREYER and SELYA, Circuit Judges.

PER CURIAM.

Following the 1984 gubernatorial election, defendants-appellants dismissed plaintiffs-appellees from their positions in the Department of Health and the Health Facilities and Services Administration ("H.F. S.A."), an agency servicing the Department of Health. Plaintiffs filed the instant action claiming that they were dismissed because of their political affiliation. They sought declaratory and injunctive relief, back pay and damages pursuant to state and federal law, particularly 42 U.S.C. § 1983. Defendants moved for partial summary judgment on the basis of their qualified immunity from section 1983 damages actions.[1] The court below denied their motion and this appeal followed. This court has jurisdiction to consider on interlocutory appeal the question whether the denial of summary judgment on qualified immunity grounds was proper. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985); *Mendez–Palou v. Rohena–Betancourt*, 813 F.2d 1255, 1256 (1st Cir.1987).

## I. QUALIFIED IMMUNITY ANALYSIS

■ The doctrine of qualified immunity protects a public official from suit in a section 1983 damages action if, at the time of the challenged conduct, the right the defendant allegedly violated was not "clearly established." *Mendez–Palou*, 813 F.2d at 1259. The test focuses on the "objective legal reasonableness" of the action. *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creigh-*

*ton,* — U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ In the context of discharges based on political affiliation, *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), form the basis of the right plaintiffs allege was violated in this case. Read together, these cases provide that public employees may not be discharged due to their political affiliations under the first and fourteenth amendments, unless "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Elrod*, 427 U.S. at 373, 96 S.Ct. at 2689–90; *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295. As we stated in *Mendez–Palou*, the relevant inquiry in disposing of qualified immunity questions in the area of public discharges is "whether it was clearly established that employees in the *particular positions* at issue, in light of the responsibilities inherent in those positions, were protected from patronage dismissal." 813 F.2d at 1259 (emphasis in original); *Juarbe–Angueira v. Arias*, 831 F.2d 11, 13 (1st Cir.1987). We concluded generally that "there was no clearly established constitutional protection against patronage dismissal [in 1985] for those individuals whose positions *potentially* concerned matters of partisan political interest and involved *at least a modicum* of policymaking responsibility, access to confidential information, or official communication." *Mendez–Palou*, 813 F.2d at 1259 (emphasis added); *Quintana v. Anselmi*, 817 F.2d 891, 892 (1st Cir.1987); *Juarbe–Angueira*, at 14. As we recently have emphasized, "defendants will normally enjoy qualified immunity from damage liability in upper level, managerial-type job dismissal cases, cases where the jobs in question are not *purely* technical or scientific in nature." *Juarbe–Angueira*, at 14 (emphasis added).

■ In determining whether defendants are entitled to qualified immunity, we may look beyond the allegations in plain-

---

1. Defendants moved for partial summary judg- ment against only five of the original plaintiffs.

tiffs' complaints if they are insufficient for us to answer the immunity question. *Mendez–Palou*, 813 F.2d at 1260. We may, in this situation, examine undisputed record material not contained in the complaints. *Id.; see also Quintana*, 817 F.2d at 892. Specifically, we are to rely on undisputed job classification questionnaires, whenever possible, for a description of the "inherent powers and responsibilities" of the positions at issue. *Mendez–Palou*, 813 F.2d at 1260.[2]

## II. PLAINTIFFS' POSITIONS

■ Before addressing each of plaintiffs' positions, we first point out that there is no doubt that the agencies where plaintiffs were employed are charged with a politically sensitive mission. The Department of Health handles all matters "related to public health, sanitation and welfare...." P.R. Laws Ann. tit. 3, § 171. The H.F.S.A. is attached to the Department of Health and was created to "administer and operate the facilities for health protection and care...." *Id.* tit. 24, §§ 337, 337c(a). Clearly, issues concerning public health and the provision of health care services to the residents of Puerto Rico "potentially involve partisan political disagreement concerning policy goals and implementation." *Mendez–Palou*, 813 F.2d at 1260.

### A. *Ernesto Nunez: Auxiliary Director of Fiscal Resources of the H.F.S.A.*

■ Nunez was dismissed from his position as Auxiliary Director of Fiscal Re-

sources of the H.F.S.A. This is classified as a "trust or confidence" position by the Puerto Rico Public Service Personnel Act. P.R. Laws Ann. tit. 3, § 1350. The classification questionnaire describes the duties of this position:

1. Insure that the fiscal and accounting systems and procedures which facilitate the implementation of the established fiscal policies and norms be designed, implemented and maintained up-to-date.

2. Follow-up and evaluate the operation of the fiscal systems of the Administration to insure that it is acting within the parameters of the established policy in this respect and that the established norms are being followed.

3. Develop the internal fiscal policy and norms of the Administration.

4. Develop the fiscal mechanisms needed to maximize the income of the Administration and that this income be used in an adequate manner pursuant to the prevailing needs.

5. Be responsible for the preservation of the assets of the Administration.

6. Be responsible for analyzing the fiscal affairs of the Administration and to submit systematically to its Executive Director its recommendations in such a manner that the financial soundness of said Administration be insured.

7. Advise the Executive Director and the Secretary of Health on those financial matters which foster the growth and solidity of the Administration.

---

**2.** In their brief on appeal, plaintiffs allege that, with one exception, the job descriptions at issue are not undisputed. Specifically, for four of the positions, the job description forms do not contain plaintiffs' signatures. These four plaintiffs also claim that these descriptions do not accurately describe their duties. Therefore, plaintiffs appear to argue that it is improper to rely on them in determining a motion for summary judgment based on qualified immunity and, as a result, a question of fact remains concerning the inherent duties of these four positions.

Although a recent opinion of this court supports plaintiffs' position, their argument is unavailing in the present circumstances. In *Romero Feliciano v. Torres Gaztambide*, 824 F.2d 135 (1st Cir.1987) (affirming issuance of preliminary injunction), plaintiff had not signed the OP–16 form and claimed that it did not correct-

ly describe his job. We held that this created a disputed fact issue—what the inherent duties of the position were—and held that the district court judge had not abused his discretion in relying on plaintiffs' testimony concerning his duties. *Id.* at 138. Here, however, plaintiffs stated in a sworn statement accompanying their opposition to defendants motion for partial summary judgment, that "our duties or functions ... in the A.F.H.S. were exclusively the ones described in our job descriptions annexed by the defendants to their 'Motion for Partial Summary Judgment.'" Appendix, Volume II, at 288–89. These are the job descriptions the four plaintiffs now dispute. Having admitted below that the classification questionnaires were accurate, plaintiffs now may not attack them. Thus, this case is distinguishable from *Romero Feliciano*.

Although this position involves some technical work such as maintaining the accounting systems of the H.F.S.A., we do not agree with Nunez that his duties concerned only the professional provision of bookkeeping services. Nunez argues that the Auxiliary Director's position is similar to that of the vice president of the Finance Area for the Puerto Rico Government Development Bank in *De Choudens v. The Government Development Bank*, 801 F.2d 5 (1st Cir.1986) (en banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987). There we found that the district court judge had not abused his discretion in holding that the position at issue, even though it involved policy contributions concerning the oversight of the accounting services and budget recommendations concerning the bank, was politically neutral.

*De Choudens* is distinguishable. First, the Auxiliary Director's position involves the *development* of the "internal fiscal policy and norms" of the H.F.S.A. The person in this position also is in charge of maximizing the income of the agency and in determining *how* to use that income. Finally, the Auxiliary Director analyzes the fiscal affairs of the agency and advises and makes recommendations to the Executive Director concerning the future growth of the H.F.S.A.

There is no doubt that, under the standard applicable to this type of case, this position involves the Auxiliary Director in areas that at least potentially concern matters of partisan interest. How an agency's income is spent and how fiscal policy is analyzed with a view to determining the future growth of the agency seems to us to be of political interest. One in this position has more than the required "modicum" of policymaking responsibility. *See Rosado v. Zayas*, 813 F.2d 1263, 1266 (1st Cir.1987) (position of Director of Bureau of Statistics for the Economic and Social Planning Program of Planning Board concerns partisan political matters where, although "the tools

of the ... job are numbers, the substance of his work involves analysis and planning in the politically charged areas of economic and social development"). Thus, it was not clearly established that the Auxiliary Director was entitled to protection from political discharge. *Id.*

### B. *Icelia Medina Medina: Special Assistant III to the Secretary of Health*

▮ Medina, who was dismissed from her position as Special Assistant III to the Secretary of Health, signed the OP–16 which describes the duties of her position. Such position is classified as a trust or confidence position by the Puerto Rico Public Service Personnel Act.

We need not enumerate the specific duties listed in the OP–16. It is clear from a brief summary of them that Medina occupied a position that involved politically sensitive public relations work. A Special Assistant III represents the Secretary of Health at meetings and other official activities. He or she analyzes requests for meetings and interviews with the Secretary and drafts documents for the Secretary's signature, as well as handles complaints and grievances directed to the Secretary. The individual in this position also acts as liaison between the Office of the Secretary and other agencies. As for contact with the public, this position involves coordinating press conferences with the Communications Advisor and acting as a liaison between the Secretary and the news media. Finally, a Special Assistant III supervises all administrative activities of the Secretary's office and has the authority to issue instructions to all assistant secretaries, heads of advisory offices and regional directors.[3]

Essentially, the Special Assistant III acts as a spokesperson for the Secretary. As such, the Secretary could reasonably believe that, to be effective, the person who

---

**3.** The OP–16 indicates the confidential and policymaking nature of this position:

As Special Assistant to the Secretary of Health, performs work of a confidential nature and of great responsibility and trust help-

ing the Executive of the Agency in highly complex tasks. Performs his duties with absolute independence of criteria and full authority delegated by the Executive.

filled this position must share the Secretary's political beliefs. *See Vazquez Rios v. Hernandez Colon*, 819 F.2d 319, 326–27 (1st Cir.1987) (political dismissal of Editing Assistant who communicates with the media on behalf of the Governor was objectively reasonable). Although made in the context of elected officials, we find the statement of the Supreme Court in *Branti* relevant: "it is ... clear that the [Secretary] may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments." 445 U.S. at 518, 100 S.Ct. at 1295. Thus, it was objectively reasonable that Medina could be dismissed on party affiliation grounds. *Vazquez Rios*, 819 F.2d at 327.

### C. *Wilbert Perez Perez: Special Assistant III to the Executive Director of the H.F.S.A.*

■ The position from which Perez was dismissed, Special Assistant III to the Executive Director of the H.F.S.A., is a position of trust or confidence under the Personnel Act. The duties of this position, in relevant part, are contained in the Classification Questionnaire:

2. Investigates and analyzes problems in specialized health areas.

3. Analyzes the application of laws and regulations to the health programs.

4. Studies and recommends solutions to problems referred by Mayors, Legislators and other Government officials.

5. Represents the Executive Director in those activities which are assigned to him.

.    .    .    .    .

7. Advises the Regional and Program Administrators in matters related to the administrative phases of the health institutions or health programs.

It seems clear from the above that this position is not "purely technical or scientific" in nature. Rather, the Special Assistant III engages in the processes of analysis and recommendation of matters, both legal and administrative, regarding health programs. The connection between advice on such issues and agency policymaking "potentially" involves the Special Assistant in matters of political concern. *See Zayas–Rodriguez v. Hernandez*, 830 F.2d 1, 3 (1st Cir.1987). Also, by recommending solutions to problems referred by other officials, the person in this position is involved in the process of applying agency policies directly to concrete areas in health services. Thus, it was not clearly established, in 1985, that one in this position was entitled to protection from political discharge.

### D. *Juanita Soegard Matta: Assistant Director, Area of Purchase and Sale of Services and Supplies of the H.F. S.A.*

■ This position, also a trust or confidence position under the Personnel Act, presents a closer question than the prior ones. Basically, the Assistant Director is in charge of the purchase and sale of services and supplies for the entire H.F.S.A. Many of the duties of this position are devoted to establishing the procedures, forms and evaluation systems of the purchase and sale of these supplies and services. This is accomplished pursuant to already established needs and priorities of the H.F.S.A. To this extent, the tasks of the Assistant Director do not appear to involve policymaking or issues of potential political dispute and these aspects of the position resemble those in *De Choudens*.

However, this position is not "purely technical ... in nature." *Juarbe-Angueira*, at 14. It also involves one in advising the Executive Director of the H.F.S.A. on solutions to conflicting situations and "actively" participating in the solution of challenges, protests or litigation against the H.F.S.A. The Assistant Director establishes norms for the evaluation of new commercial firms that desire to become bidders for providing services to the H.F.S.A. In addition, he or she exercises public relations functions with suppliers who are bidders with the aim of improving the commercial relationship between the bidders and the H.F.S.A.; the Assistant Director

acts as an adviser to the Bid Committee on all matters relating to the adjudication of bids. Finally, the supervision of all personnel in the Area of Purchase and Sale is the responsibility of this position.

We believe that this work "potentially" concerns matters, such as bidding, about which there is room for political difference. Also, the position of Assistant Director involves a "modicum" of policymaking responsibility. Not only does the job entail advice on matters such as litigation, it also puts the person occupying it in a public relations position concerning policy matters such as the bidding process. Although we do not intimate that every purchasing agent position potentially involves some policymaking responsibility, the attributes of this particular job place it on the policymaker, rather than the clerk, end of the spectrum. *See Ecker v. Cohalan*, 542 F.Supp. 896, 901 (E.D.N.Y.1982) (quoted in *Mendez–Palou*, 813 F.2d at 1259). Clerks do not act in an advisory capacity nor do they have extensive supervisory responsibilities. Because Soegard's position fell in the gray area of the spectrum, it was not clearly established in 1985 that one in her position was protected from political discharge. We therefore believe, under *Mendez–Palou* and *Juarbe–Angueira*, that qualified immunity applies.

### E. *Dolores Hernandez Conde: Special Assistant II to the Executive Director of H.F.S.A.*

The Special Assistant II reports directly to the Executive Director of H.F.S.A. The position is one of trust or confidence under the Personnel Act. In essence, the classification questionnaire provides that the person in this position advises the Executive Director on "all matters related to the operation and the services rendered by the clinical laboratories of all public hospitals in Puerto Rico...." ¶ 1. These duties include evaluation of personnel needs and the planning of training for personnel. The person in this job prepares budgets for the operation of all laboratories and for the assignment of technologists and establishes priorities pursuant to the needs of each hospital. He or she also prepares reports

and correspondence for the Executive Director's signature, as well as attends meetings on behalf of both the Executive Director and the Secretary of Health with distributors of laboratory equipment.

It is clear that this position is not "purely technical or scientific in nature." *Juarbe–Angueira*, at 14. The provision of any kind of health service, such as laboratory services, to the public "potentially" concerns matters of partisan political interest. This position also involves at least a "modicum" of policymaking responsibility as the job entails establishing priorities among hospitals and preparing budgets. Finally, some of the duties are communicative in nature and involve representing the Executive Director and the Secretary of Health to the public. Political affiliation is an appropriate concern in this context. *Branti*, 445 U.S. at 518, 100 S.Ct. at 1294–95. Thus, it was not clearly established that this position was protected from political discharge.

The judgment of the district court in respect to the issue of qualified immunity is

*Reversed.*