OFICINAS MEDICAS, INC. d/b/a Women Metropolitan Clinic, Rosa Caceres and Dr. Santiago Diaz–Colon, Plaintiffs,

v.

**CARMEN FELICIANO DE MELECIO, Defendant.**

Civ No. 96–1658(PG).

United States District Court, D. Puerto Rico.

March 12, 1999.

Marta Elisa González, Hato Rey, PR, for plaintiffs.

José R. Cintrón, Dept. of Justice, Federal Litigation Division, San Juan, PR, for defendant.

## OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Pending before this Court are plaintiffs' motion for summary judgment (Dkt.# 15) and the defendant's cross-motion for summary judgment. (Dkt.# 22). Plaintiffs requested three extensions of time (Dkt. 26, 29, 30) to reply to defendant's cross-motion for summary judgment, and failed to comply with their own suggested extension-deadlines on all three occasions. The parties then requested an additional period of time to discuss the possibility of settlement, which the Court granted until March 1, 1999. Having failed to inform this Court within the specified deadline as to the progress of negotiations, the present opinion and order ensues.

### The Facts

Oficinas Médicas, Inc. (hereinafter referred to as "Oficinas Médicas") has been operating its medical offices under the name of Women Metropolitan Clinic since 1991.[1] Oficinas Médicas' operation entails the offering of medical services to those who seek family planning, including abortion in the first trimester, as well as medical attention comprised within the gynecology field. These services are rendered by personnel consisting of an administrator (plaintiff Rosa Cáceres), a physician (plain-

---

1. Throughout this opinion, any reference to Oficinas Médicas shall also refer to the Women Metropolitan Clinic.

tiff Dr. Santiago Díaz Colón), a medical assistant, and a registered nurse.

On September of 1995, a "Complaint and Notification of Deficiency" was filed against all the plaintiffs stating that plaintiffs were operating a diagnostic and treatment center specialized in birth control or a health facility without a Certificate of Need and Convenience (hereinafter referred to as "CNC") and without a proper license, as required by Law 189 enacted on July 26, 1979, 24 L.P.R.A. §§ 334 *et seq.*, and Law 101, enacted on June 26, 1965, 24 L.P.R.A. §§ 333 *et seq.* Administrative hearings related to the Complaint and Notification of Deficiency were held before the Health Department of the Commonwealth of Puerto Rico. It was established during the hearings that Oficinas Médicas had not been issued a CNC. It was also established that said entities did not have a license to operate due to its lack of compliance with Regulation 52, which provides the specifications that must be satisfied in order to obtain a license.

Two physical inspections of the Oficinas Médicas' facilities were performed by a representative of the Health Department. Subsequently, inspection reports for the years 1992 and 1993 were prepared pursuant to Regulation 52 pointing out all the deficiencies found, which included the following: (1) lack of a set of rules and regulations for the operation of the facility specifying, among other things, a quality control program, work groups, and procedures to amend the rules and regulations; (2) absence of an agreement with a hospital facility to provide services such as emergency care; (3) failure to comply with pharmacy law; (4) lack of a CNC and a license to operate a pharmacy; (5) no patient transfer reports; (6) absence of a governing board; (7) failure to meet the Health Department's dimension standards for the observation rooms; (8) eight foot ceilings; (9) lack of wash basins inside the examination rooms; and (10) absence of reserve water tanks.

After holding administrative hearings concerning the Complaint and Notification of Deficiency issued against the plaintiffs, Jeanette Arias, the Department of Health's Examiner, rendered a report on April 3, 1996 concluding that plaintiffs needed a CNC and a health facility license in order to operate, and recommended the permanent and immediate closing of the Oficinas Médicas. On the same date, defendant Carmen Feliciano de Melecio (hereinafter referred to as "Feliciano"), Secretary of the Department of Health, issued a resolution ordering the closing of the Oficinas Médicas and imposing a $25,-000.00 fine on all the plaintiffs.

### *Discussion*

I.  *Plaintiffs' Claim Against the Defendant Is Precluded by the Res Judicata Doctrine*

■ The plaintiffs, represented by counsel, filed two motions for reconsideration requesting that the Department of Health's ruling be set aside. In co-plaintiff Dr. Santiago Díaz–Colón's motion for reconsideration, the issue of the defendant's actions as infringing upon Constitution of the United States' protection of a woman's right to have an abortion was explicitly raised on numerous occasions. (Dkt. # 15, Ex. # 4, at 11 and 14–17). Nevertheless, co-plaintiffs Mrs. Rosa Cáceres and Oficinas Médicas were completely silent throughout their motions for reconsideration about any rights granted by the United States Constitution regarding the termination of pregnancy.

The plaintiffs' motions for reconsideration were implicitly denied since they were not ruled upon by the Department of Health within the statutory time frame. Consequently, plaintiffs proceeded to file in the Court of Appeals of the Commonwealth of Puerto Rico a petition seeking judicial review of the defendant's resolution. The petition for review included the same constitutional issues raised at the administrative level, but this time on behalf of all the plaintiffs. (Dkt. # 22, App.

1, at 7–11). Finally, on October 29, 1997, the Court of Appeals of the Commonwealth of Puerto Rico affirmed Feliciano's April 3, 1996 decision in its entirety except for the amount of the fine imposed on the plaintiffs.[2] Since plaintiffs have raised similar constitutional claims at the administrative level, at the local Court of Appeals, and now at a federal forum, the issue of whether res judicata precludes their action surfaces.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citation omitted). The doctrine of res judicata, however, ought not to be confused with collateral estoppel, where "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* (citation omitted).[3] "Res judicata, when the suit is between the same parties and concerns the .same operative nucleus of fact, is of broader scope [than collateral estoppel] and bars issues even *if unlitigated.*" *Lovely v. Laliberte*, 498 F.2d 1261, 1263 (1st Cir.1974), *cert. denied* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (emphasis added). Hence, res judicata precludes claims in their entirety, even if the subsequent claim raises issues that were not raised in the previous one. *Figueroa v. Banco De San Juan*, 108 D.P.R. 680, 687 (1979) citing *Mercado Riera v. Mercado Riera Y Otros*, 100 D.P.R. 940 (1972).

Even if a judgment's rationale is erroneous, res judicata continues to be a valid defense weapon in a litigant's arsenal as long as said judgment was entered by a court exercising proper jurisdiction in the absence of fraud. *Aponte Caratini v. Román Torres*, 98 TSPR 53, 1998 WL 385407, *17 (1998) (citation omitted). *See also Marrero Albino v. Vázquez Egean*, 1994 WL 909229, *1 (94 JTS 18, February 24, 1994) (res judicata not applicable when the court acted without jurisdiction). Erroneous judgments are meant to be corrected by direct review throughout the appellate process, not by the pursuance of another suit based on the same cause of action. *Bonafont Solis v. American Eagle*, 1997 WL 423416, 28–29 (97 JTS 86, June 5, 1997). "The only generally recognized exception to res judicata occurs when the litigant was denied a 'full and fair opportunity to litigate' his claims in the earlier proceeding; in this situation, application of res judicata would violate due process of law." *Arecibo Radio Corp. v. Com. of Puerto Rico*, 825 F.2d 589, 592 (1st Cir.1987) (citation omitted).[4] However, "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), *reh'g denied*, 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405.

It is imperative for this Court to follow the Commonwealth of Puerto Rico's law when determining whether a local judgment carries a preclusive effect in a

---

**2.** The Supreme Court of Puerto Rico did not grant certiorari.

**3.** For further analysis of the differences between res judicata (which triggers claim preclusion) and collateral estoppel (which activates issue preclusion), *see generally*, *Mastracchio v. Ricci*, 498 F.2d 1257 (1st Cir. 1974); *Cardillo v. Zyla*, 486 F.2d 473 (1st Cir.1973); *Bricker v. Crane*, 468 F.2d 1228 (1st Cir.1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973); *P.I. Enterprises v. Cataldo*, 457 F.2d 1012 (1st Cir. 1972).

**4.** In rare occasions where there is a great public interest at stake, the Supreme Court of Puerto Rico has also allowed exceptions to the res judicata doctrine. *Bonafont Solis, supra*, 1997 WL 423416 at *28.

federal forum. *Oliveras v. Miranda Lopo*, 800 F.2d 3, 6 (1st Cir.1986) (citations omitted). *See also Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (holding that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered").[5] Turning thus our eyes to the pertinent statutory language under Puerto Rico law, it is evident that "[i]n order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." P.R.Laws Ann. tit. 31, § 3343.[6]

■ Although the statute above mentioned is clear in its language, the courts have not felt bound to interpret "perfect identity" literally. *Berta Baez–Cruz v. Municipality of Comerio*, 140 F.3d 24, 29 (1st Cir.1998) (citation omitted). For instance, if the real parties in interest are the same, the doctrine of res judicata is applicable regardless of whether the parties listed differ. *See Futura Development Corp. v. Centex Corp.*, 761 F.2d 33, 43–44 (1st Cir.), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 121 (1985). The preclusion statute further provides that, there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right

to demand them, or the obligation to satisfy the same.

P.R.Laws Ann., tit. 33, § 3343.

■ The parties in the present case are essentially the same parties in interest at the administrative level and at the appellate level of the local courts. In the judicial review process at the Puerto Rico courts, the defendant was Department of Health of the Commonwealth of Puerto Rico. In this case, the defendant is Feliciano both in her individual capacity, and in her official capacity as the Secretary of the Department of Health. Since a suit against an officer in his or her official capacity is a suit against the state, or the entity represented by said officer, *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citations omitted), there is virtually identical parties between the previous suit and the case at bar, at least with regard to defendant in her official capacity.[7]

■ Identity of causes occurs when the new action is embedded in the previous one, or when the latter action is an inseparable consequence of the former. *Rodríguez v. Colberg Comas*, 1992 WL 754894, *3 (92 JTS 102, June 30, 1992) (citations omitted). In order to determine if there is identity of causes, we must determine "whether the underlying facts of both transactions were the same or substantially the similar." *Manego v. Orleans Bd. of Trade*, 773 F.2d 1, 6 (1st Cir.1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).

A single cause of action can· manifest itself in an outpouring of different claims, based variously on federal stat-

---

5. "It is well-established that judicially reviewed administrative fact-finding may later estop a federal claim, even though the state administrative body itself was unable to consider the federal claim as such." *Berta Baez–Cruz v. Municipality of Comerio*, 140 F.3d 24, 31 (1st Cir.1998), *Gonsalves v. Alpine Country Club*, 727 F.2d 27, 28–29 (1st Cir.1984).

6. Identity of causes is unnecessary when the defense rests on issue preclusion, rather than claim preclusion. *See Pereira v. Hernández Gonzalez*, 83 D.P.R. 160, 166 (1961).

7. Although res judicata may be inapplicable to defendant in her personal capacity, the third part of this discussion shall address plaintiffs case against defendant in her personal capacity.

utes, state statutes, and the common law. Yet, such heterogeneity alone does not work an exception to the rule of preclusion. So long as different theories of recovery, howsoever prolific, derive from the same cause of action, the requisite identity is achieved if, and to the extent that, all such theories concern "the same operative nucleus of fact." In other words, as long as the "new complaint grows out of the same 'transaction or series of connected transactions' as the old complaint, the causes of action are considered to be identical for res judicata purposes."

*Kale v. Combined Insurance Company of America,* 924 F.2d 1161, 1166 (1st Cir. 1991) (citations omitted), *cert. denied* 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 44. Since there is no question that the underlying facts surrounding the action that plaintiffs pursued in the local courts are the same as the one before this Court today, the requisite identity of causes is also satisfied, even though the present action has a § 1983 façade and the previous action had other statutes invoked.

■ With regard to the identity of things, it is enough for the preclusive effect's requirements to be satisfied that both things refer to the same matter, even if in one action the thing is addressed in its entirety and in the other only partially, or if the thing has suffered an alteration in its value between both actions. *Rodríguez v. Colberg Comas, supra,* 1992 WL 754894, at *4. Therefore, the local standard for the applicability of res judicata is somewhat different than the federal standard (*i.e.,* when both actions were decided in federal fori), which simply requires a final judgment on the merits in an earlier action, an identity of both actions, and an identity of the parties involved. *Kale v. Combined Insurance Company of America,* 924 F.2d

1161, 1165 (1st Cir.1991). Identity of things is a local requirement, not a federal one, for the availability of claim preclusion. Yet, since this case involves the application of res judicata in a federal forum regarding a local court's judgment, this Court must demand that the identity-of-things-requirement be satisfied in the matter at bar.

Plaintiffs had the opportunity to fully litigate their constitutional claims at Puerto Rico's Court of Appeals over matters practically identical to the ones present before this Court. Those claims related to Puerto Rico's Law 101 cannot now be brought under the § 1983 mantle, because § 1983 provides protection only against violations of rights, privileges or immunities secured by *federal* law. *Maine v. Thiboutot,* 448 U.S. 1, 5, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). As to those alleged violations of the United States' Constitution, the same were addressed by the local courts and may not be relitigated outside of the appellate process. It is well established that state courts not only have the authority to apply federal law when necessary, but also the duty to faithfully honor the Constitution and statutes of the United States. *Howlett v. Rose,* 496 U.S. 356, 367–374, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).[8] Since this Court finds that there is a virtual identity in parties, causes, and things, the doctrine of res judicata is applicable, thus precluding plaintiffs action in this federal forum. Although the courts have recognized narrow exceptions to the application of res judicata in cases of unusual hardship, *see Rose v. Town of Harwich,* 778 F.2d 77, 82 (1st Cir.1985), *cert. denied* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720, the facts of this case do not reveal such distress.

---

**8.** Only three excuses, all related to neutral judicial administration, have been found to be genuine reasons for a state court's refusal to entertain a federal cause of action (in addition, of course to lack of jurisdiction). *See Douglas v. New York, N.H. & H.R. Co.,* 279

U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929); *Herb v. Pitcairn,* 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 (1945); *State of Mo. ex rel. Southern Ry. Co. v. Mayfield,* 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950).

II. *Even If the Res Judicata Doctrine Were Not to Apply, Defendant's Actions in Her Official Capacity Were Neither Unconstitutional Nor in Violation of Plaintiffs' Rights*

The CNC requirement was adopted in Law. 2 of November 7, 1975, 24 L.P.R.A. § 334 *et seq.*, to adequately plan the facilities and services responsible for addressing the health needs of the population in a manner that controls costs without sacrificing capital investments in specialized medical equipment. *Ruiz Hernández v. Mahiqes,* 120 D.P.R. 80, 86–87 (1987). The CNC is not meant to be applied to certain individuals or organizations only, but rather to set public policy in general to health -services providers. *Id.* at 87. Thus, since the CNC does not target capriciously certain providers only, nor lacks a rational motive to support its implementation, it is difficult to see how such a requirement is unconstitutional.

Plaintiffs allege that the CNC is a violation of a woman's constitutional right to have an abortion. Nevertheless, the case law on point indicates otherwise. In *City of Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 429–430, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), *partially overruled on other grounds by Planned Parenthood v. Casey,* 505 U.S. 833, 870, 882, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), the Supreme Court of the United States indicated that "[c]ertain regulations that have no significant impact on the woman's exercise of her [abortion] right may be permissible where justified by important state health objectives." For instance, a law requiring women who seek first trimester abortions to authorize a written consent and physicians, to maintain certain records has been upheld as constitutional. *Id.*

Numerous forms of state regulation might have the incidental effect of increasing the cost or decreasing the availability of medical care, whether for abortion or any other medical procedure. The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it. Only where state regulation imposes an undue burden on a woman's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause. *Planned Parenthood v. Casey,* 505 U.S. 833, 874, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

Plaintiffs assert that this case is analogous to *Ragsdale v. Turnock,* 841 F.2d 1358 (7th Cir.1988) (holding that licensing requirement and regulations having an impact on abortion were invalid). First, *Ragsdale* was decided prior to *Planned Parenthood v. Casey.* Had the United States Supreme Court decided *Planned Parenthood v. Casey* earlier, the outcome of Ragsdale would most likely have been different. Second, in *Ragsdale,* the Court of Appeals for the Seventh Circuit found that the statute at issue was "enacted primarily with abortion clinics in mind and only applied to outpatient surgical clinics generally in an effort to save the statute from unconstitutionality." *Id.* at 1369. There is no evidence in the case at bar, however, to suggest that abortion clinics have been targeted by the legislature of Puerto Rico via the CNC requirement. The health facilities required to obtain a CNC include: hospitals, extended care facilities, nursing care facilities, rehabilitation centers, renal disease centers (including portable hemodialysis units), centers for ambulatory surgery, home health services program, diagnosis and treatment centers, pharmacies, blood banks, clinical laboratories and radiology facilities. 24 L.P.R.A. § 334(d). It is highly unlikely that the Legislature of Puerto Rico, when adopting the CNC requirement, 24 L.P.R.A. § 334a, would be targeting primarily abortion clinics in the midst of such a broad list health facilities included within the statute. Whatever the impact on abor-

tion clinics, if any, is merely incidental to health-oriented legislation that has been determined as sound public policy by the Legislature of Puerto Rico and implemented by the Secretary of the Department of Health.

This Court finds that the CNC regulations do not impose an undue burden on a woman's right to obtain an abortion. The criteria for issuing or denying a certificate to the pertinent health facilities involve factors like the projected needs of the population, the existence of alternatives to the transaction for which the certificate is requested, and the availability of human and economic resources, among others. 24 L.P.R.A. § 334b. In fact, all the deficiencies highlighted by the inspection reports on Oficinas Médicas reveal legitimate, or at a minimum, rational health concerns that are applicable to a broad spectrum of health services. Therefore, even if res judicata were not to apply in this case and this Court were to decide it on the merits, it is not possible to conclude that defendant has acted unconstitutionally or in disregard of a woman's right to have an abortion.

III. *Plaintiffs' Claim Against the Defendant in Her Personal Capacity Is Barred Because She Enjoys Qualified Immunity and the Remedies Requested Are Available Only in Official–Capacity Suit*

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Therefore, "[t]he test focuses on the 'objective legal reasonableness' of the action." *Nuñez v. Izquierdo–Mora*, 834 F.2d 19, 21 (1st Cir.1987) (citation omitted).[9]

■ In order to reach her determination to order the closing of Oficinas Médicas, Feliciano presumably relied on the report supplied by those in the Department of Health in charge of conducting physical inspections of the facilities required to have a CNC. No resolution was issued until said report revealed the deficiencies at Oficinas Médicas. Furthermore, there is no reason for her to have thought at the time that closing and fining an institution that failed to comply with the standards necessary to provide adequate health care to the general public would violate plaintiffs' rights. Yet, this analysis is futile unless plaintiffs had requested civil damages against Feliciano in her personal capacity. Plaintiffs, however, failed to request damages in their complaint. Plaintiffs have requested a declaratory judgment and a preliminary injunction. Those remedies can only be applied against Feliciano in her official capacity, because she could not have issued a resolution ordering the closing and fining of Oficinas Médicas in her personal capacity. Since it has already been determined that Feliciano's actions were not unconstitutional, and that even if they were, res judicata forbids plaintiffs' complaint from progressing any further, plaintiffs' claims against Feliciano in her personal capacity are hereby dismissed.

### Conclusion

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

---

**9.** The Court of Appeals for the Ninth Circuit has permitted "section 1983 plaintiffs to seek prospective injunctive relief against state offi- cials who have personal immunity from damages." *Wheaton v. Webb–Petett*, 931 F.2d 613, 620 (9th Cir.1991).

al fact and that the moving party is entitled to judgment as a matter of law." FedR.Civ.P.56(c). "Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Tardie v. Rehabilitation Hospital of Rhode Island,* 168 F.3d 538, 541 (1st Cir.1999), *citing Serrano–Cruz v. DFI Puerto Rico, Inc.,* 109 F.3d 23, 25 (1st Cir.1997). The Court examines the record in the light most favorable to the nonmovant and indulges all reasonable inferences in that party's favor. *Barreto–Rivera v. Medina–Vargas,* 168 F.3d 42, 45 (1st Cir. 1999), *citing Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir. 1994); *see also Geo, Knight and Co., Inc. v. Watson Wyatt & Co.,* 170 F.3d 210, 212 (1st Cir.1999).

"The moving party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to him....'" *Id. citing Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 935 (1st Cir.1987), *quoting Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). However, unsupported speculations shall not be sufficient to defeat a properly supported motion for summary judgment. *Id.* "[P]laintiff ... [must] offer [ ] ... 'significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *quoting, First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

This Court, then, must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. After having carefully evaluated all the pertinent evidence submitted, it is this Court's view that plaintiffs have failed to present any matter worthy of a trial and that judgment must be entered, as a matter of law, in defendant's favor.

**WHEREFORE,** plaintiffs' motion for summary judgment is hereby **DENIED,** and defendant's cross-motion for summary judgment is hereby **GRANTED.**

**IT IS SO ORDERED.**